**Helen Wills STRONG; B & C Metal Stamping Company; and Kearney-National, Inc.**

v.

**GENERAL ELECTRIC COMPANY.**

No. 9508.

United States District Court
N. D. Georgia,
Atlanta Division.
June 12, 1969.

King & Spalding, Atlanta, Ga., Watson, Cole, Grindle & Watson, Richard E. Babcock, Jr., and Walter D. Ames, Washington, D. C., for plaintiffs.

Sutherland, Asbill & Brennan, Joseph B. Brennan, Atlanta, Ga., John W. Malley & Edgar H. Martin, Cushman, Darby & Cushman, Washington, D. C., Francis X. Doyle, Pittsfield, Mass., for General Electric Co.

## ORDER

EDENFIELD, District Judge.

This is an action for injunctive relief, treble damages, costs, and attorney's fees, arising out of defendant's alleged infringement of two of plaintiffs' meter box patents, *i. e.*, (1) United States Patent No. 3,123,744, which is owned by Plaintiff Kearney-National, Inc., and (2) Patent No. 2,991,398, which is owned by Plaintiff Strong and under which Kearney-National is exclusive licensee. Since no evidence was introduced with regard to infringement of Patent No. 3,123,744 (the Fisher patent), all issues to be decided at this time are concerned with Patent No. 2,991,398 (hereinafter referred to as the Strong patent or Strong meter box).

The record shows that the Strong patent was applied for by Carll W. Strong on May 5, 1952, and was issued to his widow, Helen Wills Strong, as his successor in interest, on July 4, 1961. An exclusive license was granted by Mr. Strong to B & C Metal Stamping Co. of Atlanta in 1952 shortly after the patent application was filed, and some years later the license was transferred to Kearney-National. The record further shows that Defendant General Electric Company has produced meter boxes which, if the Strong patent is valid, appear to infringe upon that patent or at least upon certain of the claims contained therein.[1]

Defendant contends, however, that the Strong patent is invalid under 35 U.S.C. § 102(b) and § 103. Invalidity under § 102(b) is predicated upon the ground that more than one year prior to the date upon which the patent application was filed the Strong meter box allegedly (1) was in public use by persons other than the inventor; (2) was on sale within the meaning of § 102(b); and (3) was described in a printed publication—*Electrical South*—with sufficient clarity to enable one skilled in the art to produce the meter box which subsequently was claimed in the patent. Any one of these allegations, if proven, would serve to invalidate the patent. Furthermore, defendant contends that the patentee's failure to disclose the *Electrical South* publication to the patent office as part of the pertinent prior art constituted fraud upon the patent office and therefore invalidates all claims included in the patent, even if some of the claims otherwise would be valid.

Additionally, defendant alleges that even if the prohibitions of § 102(b) had not been violated the "invention" claimed by Carll Strong did not meet the "non-obvious" requirement imposed by § 103 [1a]

---

1. In view of the conclusions reached on the question of patentability, the court finds it unnecessary to decide the infringing character of defendant's device.

1a. 35 U.S.C. § 103 sets forth as one condition of patentability the requirement that the thing sought to be patented must be something which would not be obvious to one skilled in the art, considering the prior art as it exists at the time the patent is applied for.

1086

and therefore would have been unpatentable.

■ Patents issued by the United States Patent Office are, of course, presumed to be valid, but this presumption is a rebuttable one. A patent may be invalid for failing to meet any one of the requirements set forth in 35 U.S.C. §§ 101–103. Although § 103 was asserted as a ground of invalidity in the present case, the allegations and arguments were directed primarily toward § 102(b), which provides that an applicant has no right to patent an invention if more than one year before the date of the patent application the invention for which a patent is sought was in public use or on sale in this country or was described in a printed publication in this country or abroad.

■ The court finds that the invention claimed in the Strong patent was in fact in public use and on sale within the meaning of 35 U.S.C. § 102(b) for more than one year prior to the filing of an application for patent and that the patent is therefore invalid. Furthermore, the court finds that Claims 1, 2, and 3 of the patent were disclosed in the *Electrical South* publication in 1949 and that the applicant's failure to disclose that publication as part of the prior art brings the case squarely within the rationale of Marconi Wireless Telegraph Co. v. United States, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943), and that the entire patent must therefore be held invalid on that ground also. In view of these findings the court does not reach the question of whether the invention claimed by Patentee Strong met the "nonobvious" requirement of 35 U.S.C. § 103, or whether any one or more individual claims met that requirement.

■ *Public Use or On Sale.* When, as in this case, a defendant in an infringement suit challenges the patent's validity on the ground that the claimed invention was in public use prior to one year before the patent was applied for, that defendant has the burden of showing by clear and convincing evidence that the invention was in fact used by one other than the inventor at some time prior to the one-year period permitted by the statute.[2] "[E]ven a single public use, or only a placing on sale, is sufficient to invalidate a patent under 35 U.S.C. § 102(b)." Minnesota Mining & Mfg. Co. v. Kent Industries, Inc., 409 F.2d 99 (6th Cir. 1969); Tool Research & Engineering Corp. v. Honcor Corp., 367 F.2d 449 (9th Cir. 1966), cert. denied, 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972, reh. denied, 389 U.S. 893, 88 S.Ct. 17, 19 L.Ed.2d 203 (1967). Once a prima facie case of such use has been made out, however, the burden of going forward with the evidence shifts to plaintiff, who then must show that the use was an experimental, restricted use; if the plaintiff fails to make such a showing the invention is deemed to have been dedicated to the public and therefore to be unpatentable.[3]

In this case the fact that Strong meter boxes were in Georgia Power Company's possession prior to the critical one-year statutory period (*i. e.*, prior to May 5, 1951) is not disputed; plaintiff's own witnesses have testified that dozens of the Strong meter boxes were delivered to Georgia Power prior to that date. Furthermore, the evidence specifically shows that the boxes were delivered so that Georgia Power could use them and, hopefully, add the Strong meter box to the company's approved equipment list. Plaintiffs contend, however, that this did not constitute public use because (1) it was not shown that Georgia Power used the boxes publicly; (2) the meter boxes were given—not sold—to Georgia Power; and (3) Georgia Power had to test the meter boxes before they could be approved by the company.

2. Southern Implement Mfg. Co. v. McLemore, 350 F.2d 244 (5th Cir. 1965).

3. FMC Corp. v. F. E. Myers & Bro. Co., 384 F.2d 4 (6th Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); Atlas v. Eastern Air Lines, Inc., 311 F.2d 156 (1st Cir. 1962).

■ Even assuming arguendo that each of these three statements is true, plaintiffs' conclusion that they do not result in public use is clearly erroneous. That the public-use prohibition contained in § 102(b) refers to *any* unrestricted use by one other than the inventor, regardless of whether the user is a donee or a purchaser, is an elementary principle of patent law which is no longer open to question. It makes no difference whatever whether the invention was used in the "public eye" or not, or whether the user acquired it by gift or by sale.[4]

Plaintiffs' own evidence shows (1) that the Strong meter boxes were delivered to Georgia Power for *use*, and (2) that no conditions of secrecy were imposed upon Georgia Power with regard to those boxes. Any use to which that company put the boxes was therefore an unrestricted use. Furthermore, even though Georgia Power announced that it must test the meter box before it could be put on the company's approved list, there is nothing to suggest that this testing was required in order to perfect or improve the meter box, or in order to demonstrate that it was marketable. Rather, Georgia Power's tests were purely and simply to determine whether Georgia Power liked the Strong meter box. The evidence clearly shows that B & C Metal Stamping Co. (the first exclusive licensee) considered the Strong meter box to be marketable and was in fact making great efforts to sell the boxes to Georgia Power and to others as well.

Furthermore, there was evidence tending to show that the City of Albany purchased ringless meter boxes from B & C in June, 1950, and again in February, 1951, and undisputed evidence showing that B & C never manufactured and sold ringless meter boxes other than those of the Strong patent type. The court finds that B & C did in fact sell Strong meter boxes to the City of Albany more than one year before the Strong patent application was filed and that it delivered meter boxes to Georgia Power Company to be used in whatever manner that company chose, without restriction. The court holds, therefore, that either the City of Albany or the Georgia Power Company transactions would be sufficient to establish that the Strong meter boxes were on sale as well as in public use prior to May 5, 1951, and that any invention claimed in the Strong patent had entered the public domain and was unpatentable at the time the patent application was filed.

■ *Anticipation by Publication.* A creation which ordinarily would be patentable either as a new creation or as an improvement upon old art is not patentable if more than one year prior to the date of application for the patent the completed invention was described in a printed publication in such detail that any person skilled in the art could use it without further instruction. In such cases, the invention is deemed to be in the public domain and therefore not patentable. Furthermore, an otherwise patentable claim within a patent may be lost to the inventor because of fraud in the procurement of his patent. One who is sued for infringement may challenge the validity of the patent on the ground that part of the device which has been patented by the plaintiff was actually not patentable.[5] Invalidity of any part of a patent will defeat the entire patent unless (1) the invalid portion was claimed through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, and (2) is disclaimed without unreasonable neglect or delay.[6]

4. Egbert v. Lippmann, 104 U.S. 333, 26 L. Ed. 755 (1881); FMC Corp. v. F. E. Myers & Bro. Co., *supra* n. 3; Tool Research & Engineering Corp. v. Honcor Corp., *supra*; Cloud v. Standard Packaging Corp., 376 F.2d 384 (7th Cir. 1967).

5. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

6. Marconi Wireless Telegraph Co. v. United States, *supra* 320 U.S. at 57, 63 S.Ct.

In the instant case the evidence shows that in January, 1949, a meter box invented by Patentee Strong was described in the publication *Electrical South* and that it was represented as having a patent pending. The evidence clearly shows that the advantages claimed for the *Electrical South* meter box are also claimed in the patent applied for more than three years later, and that the components pictured and described in that publication correspond to those covered by Claims 1, 2, and 3 of the Strong patent. Plaintiffs contend, however, that the *Electrical South* meter box did not anticipate the Strong meter box because the *Electrical South* box required a gasket for sealing while the Strong meter box does not. The court finds that this allegation is completely unsupported by the evidence; no gasket is evident in the *Electrical South* illustration and nowhere in the article is a gasket even mentioned. On the contrary, the article specifically states that, "In this design, for which patents are now pending, the meter is sealed securely in place by the cover which rests firmly against the meter base rim." Plaintiffs would have the court assume that the *Electrical South* meter box contained a gasket merely because the description does not say "no gasket." This the court cannot do.[7]

There was also evidence to show, and the court now finds as a fact, that the *Electrical South* publication was sufficiently clear to enable one reasonably skilled in the art to reproduce it and that the product so produced would have been the same meter box for which a patent

was issued in 1961. The court also finds that the *Electrical South* publication was published with Mr. Strong's knowledge, if not at his request, so that his failure to include that publication as part of the prior art to be considered by the patent office invalidates all claims in the patent even if some of those claims otherwise would have been patentable.[8]

Plaintiffs contend that even if the *Electrical South* article did anticipate the Strong patent it could not invalidate Claims 4 and 5 because those claims include "conducting fingers" which were not included in *Electrical South* and that since there is no evidence that failure to disclose prior art was intended to deceive, only those claims actually described in the publication can be held invalid.

Such an approach was rejected by the United States Supreme Court in *Marconi* and must be rejected here. Plaintiffs have suggested that the *Marconi* decision has been "overruled" by 35 U.S.C. §§ 253 and 288, which provide in essence that each claim in a patent stands alone and that some may stand even though others are invalid, but those sections apply to invalid claims which are made inadvertently or by mistake and which are promptly disclaimed.[9]

The court finds that patentee in the instant case does not meet either of these requirements, and the anticipation of Claims 1–3 by the *Electrical South* publication therefore invalidates all claims in the Strong patent even if Claims 4

1393, 87 L.Ed. 1731; Chicopee Mfg. Corp. v. Columbus Fiber Mills Co., 165 F.Supp. 307, 314 (M.D.Ga.1958).

7. On the other hand, the description in *Electrical South* does not mention the conducting fingers claimed in Claim 4 of the Strong patent either, but in that case plaintiffs quite properly insist that the court cannot *assume* that conducting fingers were included in the prior publication.

8. Marconi Wireless Telegraph Co. v. United States, *supra* n. 6.

9. Actually *Marconi* was based on §§ 65 and 71 of the old statute—and these sections became 253 and 288 in the '52 statute. The language which states that these sections were designed to eliminate the harshness of the old law which invalidated all claims if any one was invalid refers to the sections as originally enacted (about 1870). Prior to that time *any* overclaiming invalidated a patent; these sections merely eliminated that result *if* (1) the overclaiming was due to inadvertence or mistake and (2) a prompt disclaimer was filed.

and 5 would otherwise have met the requirements of 35 U.S.C. §§ 101–103.

The defendant may therefore present a judgment in accordance with these findings and conclusions.