Helen Wills STRONG and Kearney-National, Inc., Plaintiffs-Appellants,

v.

GENERAL ELECTRIC COMPANY,
Defendant-Appellee.

No. 29148.

United States Court of Appeals,
Fifth Circuit.

Dec. 8, 1970.

Rehearing Denied and Rehearing En Banc Denied Jan. 21, 1971.

Charles L. Gowen, Atlanta, Ga., Walter D. Ames, Washington, D. C., for appellants.

James R. Paulk, Jr., Joseph B. Brennan, Atlanta, Ga., John W. Malley, Edgar H. Martin, Washington, D. C., Francis X. Doyle, Pittsfield, Mass., for appellee.

Before THORNBERRY, GOLDBERG and AINSWORTH, Circuit Judges.

PER CURIAM:

This is an appeal from the district court's judgments in appellants' suit for infringement of two patents. 305 F. Supp. 1084 and 1089. We affirm the orders appealed from, and adopt and affirm the district court's cogent opinions, copies of which are attached hereto.

APPENDIX

Filed Jun. 13, 1969

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

Civil Action No. 9508

Order

This is an action for injunctive relief, treble damages, costs, and attorney's fees, arising out of defendant's alleged infringement of two of plaintiffs' meter box patents, *i. e.*, (1) United States Patent No. 3,123,744, which is owned by Plaintiff Kearney-National, Inc., and (2) Patent No. 2,991,398, which is owned by Plaintiff Strong and under which Kearney-National is exclusive licensee. Since no evidence was introduced with regard to infringement of Patent No. 3,123,744 (the Fisher patent), all issues to be decided at this time are concerned with Patent No. 2,991,398 (hereinafter referred to as the Strong patent or Strong meter box).

The record shows that the Strong patent was applied for by Carll W. Strong on May 5, 1952, and was issued to his widow, Helen Wills Strong, as his successor in interest, on July 4, 1961. An exclusive license was granted by Mr. Strong to B & C Metal Stamping Co. of Atlanta in

1952 shortly after the patent application was filed, and some years later the license was transferred to Kearney-National. The record further shows that Defendant General Electric Company has produced meter boxes which, if the Strong patent is valid, appear to infringe upon that patent or at least upon certain of the claims contained therein.[1]

Defendant contends, however, that the Strong patent is invalid under 35 U.S.C. § 102(b) and § 103. Invalidity under § 102(b) is predicated upon the ground that more than one year prior to the date upon which the patent application was filed the Strong meter box allegedly (1) was in public use by persons other than the inventor; (2) was on sale within the meaning of § 102(b); and (3) was described in a printed publication—*Electrical South*—with sufficient clarity to enable one skilled in the art to produce the meter box which subsequently was claimed in the patent. Any one of these allegations, if proven, would serve to invalidate the patent. Furthermore, defendant contends that the patentee's failure to disclose the *Electrical South* publication to the patent office as part of the pertinent prior art constituted fraud upon the patent office and therefore invalidates all claims included in the patent, even if some of the claims otherwise would be valid.

Additionally, defendant alleges that even if the prohibitions of § 102(b) had not been violated the "invention" claimed by Carll Strong did not meet the "nonobvious" requirement imposed by § 103 [1A] and therefore would have been unpatentable.

Patents issued by the United States Patent Office are, of course, presumed to be valid, but this presumption is a rebuttable one. A patent may be invalid for failing to meet any one of the require-ments set forth in 35 U.S.C. §§ 101–103. Although § 103 was asserted as a ground of invalidity in the present case, the allegations and arguments were directed primarily toward § 102(b), which provides that an applicant has no right to patent an invention if more than one year before the date of the patent application the invention for which a patent is sought was in public use or on sale in this country or was described in a printed publication in this country or abroad.

The court finds that the invention claimed in the Strong patent was in fact in public use and on sale within the meaning of 35 U.S.C. § 102(b) for more than one year prior to the filing of an application for patent and that the patent is therefore invalid. Furthermore, the court finds that Claims 1, 2, and 3 of the patent were disclosed in the *Electrical South* publication in 1949 and that the applicant's failure to disclose that publication as part of the prior art brings the case squarely within the rationale of *Marconi Wireless Telegraph Co. v. United States*, 320 U.S. 1, 63 S.Ct. 1393, 87 L.Ed. 1731 (1943), and that the entire patent must therefore be held invalid on that ground also. In view of these findings the court does not reach the question of whether the invention claimed by Patentee Strong met the "nonobvious" requirement of 35 U.S.C. § 103, or whether any one or more individual claims met that requirement.

*Public Use or On Sales.* When, as in this case, a defendant in an infringement suit challenges the patent's validity on the ground that the claimed invention was in public use prior to one year before the patent was applied for, that defendant has the burden of showing by clear and convincing evidence that the invention was in fact used by one other than the inventor at some time prior to the one-year period permitted by the

---

1. In view of the conclusions reached on the question of patentability, the court finds it unnecessary to decide the infringing character of defendant's device.

1A. 35 U.S.C. § 103 sets forth as one condition of patentability the requirement that the thing sought to be patented must be something which would not be obvious to one skilled in the art, considering the prior art as it exists at the time the patent is applied for.

statute.[2] "[E]ven a single public use, or only a placing on sale, is sufficient to invalidate a patent under 35 U.S.C. § 102(b)." Minnesota Mining & Mfg. Co. v. Kent Industries, Inc., 409 F.2d 99 (6th Cir. 1969); Tool Research & Engineering Corp. v. Honcor Corp., 367 F.2d 449 (9th Cir. 1966), cert. denied, 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972, reh. denied, 389 U.S. 893, 88 S.Ct. 17, 19 L. Ed.2d 203 (1967). Once a prima facie case of such use has been made out, however, the burden of going forward with the evidence shifts to plaintiff, who then must show that the use was an experimental, restricted use; if the plaintiff fails to make such a showing the invention is deemed to have been dedicated to the public and therefore to be unpatentable.[3]

In this case the fact that Strong meter boxes were in Georgia Power Company's possession prior to the critical one-year statutory period (i. e., prior to May 5, 1951) is not disputed; plaintiff's own witnesses have testified that dozens of the Strong meter boxes were delivered to Georgia Power prior to that date. Furthermore, the evidence specifically shows that the boxes were delivered so that Georgia Power could use them and, hopefully, add the Strong meter box to the company's approved equipment list. Plaintiffs contend, however, that this did not constitute public use because (1) it was not shown that Georgia Power used the boxes publicly; (2) the meter boxes were given—not sold—to Georgia Power; and (3) Georgia Power had to test the meter boxes before they could be approved by the company.

Even assuming arguendo that each of these three statements is true, plaintiffs' conclusion that they do not result in public use is clearly erroneous. That the public-use prohibition contained in § 102 (b) refers to any unrestricted use by one other than the inventor, regardless of whether the user is a donee or a purchaser, is an elementary principle of patent law which is no longer open to question. It makes no difference whatever whether the invention was used in the "public eye" or not, or whether the user acquired it by gift or by sale.[4]

Plaintiffs' own evidence shows (1) that the Strong meter boxes were delivered to Georgia Power for use, and (2) that no conditions of secrecy were imposed upon Georgia Power with regard to those boxes. Any use to which that company put the boxes was therefore an unrestricted use. Furthermore, even though Georgia Power announced that it must test the meter box before it could be put on the company's approved list, there is nothing to suggest that this testing was required in order to perfect or improve the meter box, or in order to demonstrate that it was marketable. Rather, Georgia Power's tests were purely and simply to determine whether Georgia Power liked the Strong meter box. The evidence clearly shows that B & C Metal Stamping Co. (the first exclusive licensee) considered the Strong meter box to be marketable and was in fact making great efforts to sell the boxes to Georgia Power and to others as well.

Furthermore, there was evidence tending to show that the City of Albany purchased ringless meter boxes from B & C in June, 1950, and again in February, 1951, and undisputed evidence showing that B & C never manufactured and sold ringless meter boxes other than those of the Strong patent type. The court finds that B & C did in fact sell Strong meter boxes to the City of Albany more than one year before the Strong patent application was filed and that it delivered meter boxes to Georgia Power Company

2. Southern Implement Mfg. Co. v. Mc-Lemore, 350 F.2d 244 (5th Cir. 1965).

3. FMC Corp. v. F. E. Myers & Bro. Co., 384 F.2d 4 (6th Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed. 2d 1291 (1968); Atlas v. Eastern Air Lines, Inc., 311 F.2d 156 (1st Cir. 1962).

4. Egbert v. Lippman, 104 U.S. 333, 26 L.Ed. 755 (1881); FMC Corp. v. F. E. Myers & Bro. Co., supra n. 3; Tool Research & Engineering Corp. v. Honcor Corp., supra; Cloud v. Standard Packaging Corp., 376 F.2d 384 (7th Cir. 1967).

to be used in whatever manner that company chose without restriction. The court holds, therefore, that either the City of Albany or the Georgia Power Company transactions would be sufficient to establish that the Strong meter boxes were on sale as well as in public use prior to May 5, 1951, and that any invention claimed in the Strong patent had entered the public domain and was unpatentable at the time the patent application was filed.

*Anticipation by Publication.* A creation which ordinarily would be patentable either as a new creation or as an improvement upon old art is not patentable if more than one year prior to the date of application for the patent the completed invention was described in a printed publication in such detail that any person skilled in the art could use it without further instruction. In such cases, the invention is deemed to be in the public domain and therefore not patentable. Furthermore, an otherwise patentable claim within a patent may be lost to the inventor because of fraud in the procurement of his patent. One who is sued for infringement may challenge the validity of the patent on the ground that part of the device which has been patented by the plaintiff was actually not patentable.[5] Invalidity of any part of a patent will defeat the entire patent unless (1) the invalid portion was claimed through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, and (2) is disclaimed without unreasonable neglect or delay.[6]

In the instant case the evidence shows that in January, 1949, a meter box invented by Patentee Strong was described in the publication *Electrical South* and that it was represented as having a pat-ent pending. The evidence clearly shows that the advantages claimed for the *Electrical South* meter box are also claimed in the patent applied for more than three years later, and that the components pictured and described in that publication correspond to those covered by Claims 1, 2, and 3 of the Strong patent. Plaintiffs contend, however, that the *Electrical South* meter box did not anticipate the Strong meter box because the *Electrical South* box required a gasket for sealing while the Strong meter box does not. The court finds that this allegation is completely unsupported by the evidence; no gasket is evident in the *Electrical South* illustration and nowhere in the article is a gasket even mentioned. On the contrary, the article specifically states that, "In this design, for which patents are now pending, the meter is sealed securely in place by the cover which rests firmly against the meter base rim." Plaintiffs would have the court assume that the *Electrical South* meter box contained a gasket merely because the description does not say "no gasket". This court cannot do.[7]

There was also evidence to show, and the court now finds as a fact, that the *Electrical South* publication was sufficiently clear to enable one reasonably skilled in the art to reproduce it and that the product so produced would have been the same meter box for which a patent was issued in 1961. The court also finds that the *Electrical South* publication was published with Mr. Strong's knowledge, if not at his request, so that his failure to include that publication as part of the prior art to be considered by the patent office invalidates all claims in the patent even if some of those claims otherwise would have been patentable.[8]

5. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965).

6. Marconi Wireless Telegraph Co. v. United States, *supra* 320 U.S. 1 at 57, 63 S.Ct. 1393; Chicopee Mfg. Corp. v. Columbus Fiber Mills Co., 165 F.Supp. 307, 314 (M.D.Ga.1958).

7. On the other hand, the description in *Electrical South* does not mention the conducting fingers claimed in Claim 4 of the Strong patent either, but in that case plaintiffs quite properly insist that the court cannot *assume* that conducting fingers were included in the prior publication.

8. Marconi Wireless Telegraph Co. v. United States, *supra* n. 6.

Plaintiffs contend that even if the *Electrical South* article did anticipate the Strong patent, it could not invalidate Claims 4 and 5 because those claims include "conducting fingers" which were not included in *Electrical South* and that since there is no evidence that failure to disclose prior art was intended to deceive, only those claims actually described in the publications can be held invalid.

Such an approach was rejected by the United States Supreme Court in *Marconi* and must be rejected here. Plaintiffs have suggested that the *Marconi* decision has been "overruled" by 35 U.S.C. §§ 253 and 288, which provide in essence that each claim in a patent stands alone and that some may stand even though others are invalid, but those sections apply to invalid claims which are made inadvertently or by mistake and which are promptly disclaimed.[9]

The court finds that patentee in the instant case does not meet either of these requirements, and the anticipation of Claims 1–3 by the *Electrical South* publication therefore invalidates all claims in the Strong patent even if Claims 4 and 5 would otherwise have met the requirements of 35 U.S.C. §§ 101–103.

The defendant may therefore present a judgment in accordance with these findings and conclusions.

This 12th day of June, 1969.

/s/ NEWELL EDENFIELD

Newell Edenfield

United States District Judge

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

[Filed October 21, 1969]

No. 9508

Order

This is an action for injunctive relief, treble damages, costs, and attorneys' fees, arising out of defendant's alleged infringement of two of plaintiffs' meter box patents, i. e., (1) United States Patent No. 3,123,744 (the "Fisher" patent), which is owned by plaintiff Kearney-National, Inc., and (2) Patent No. 2,991,398 (the "Strong" patent), which is owned by plaintiff Strong and under which Kearney-National is exclusive licensee.

Following a non-jury trial on the merits as to the validity of the Strong patent the court found that more than one year prior to the filing of the patent application the invention claimed therein had been (1) disclosed by publication and (2) in public use and on sale. The Strong patent was therefore held to be invalid and interlocutory judgment was entered accordingly. The case is now before the court upon defendant General Electric's motion for summary judgment with regard to the Fisher patent.

General Electric contends that the Fisher patent is invalid as a matter of law in that the invention described therein (1) was in public use and on sale more than one year before application for patent was made, (2) was described in a printed publication more than one year before the patent was applied for, and (3) did not represent a patentable improvement over prior art. The first ground is decisive and it is upon that ground that the court bases *its decision, without reaching* the questions presented by grounds (2) and (3).

It is undisputed that samples of the Fisher meter box were delivered to Duke Power Company for unrestricted use in March, 1961, thirteen months before the patent application was filed on April 4, 1962. Plaintiffs contend that the boxes were *given* rather than *sold* to Duke Power and that a gift does not invalidate a patent under 35 U.S.C. § 102(b). That contention is utterly without merit. An inventor may not prolong the statutory period of monopoly by any means

---

9. Actually *Marconi* was based on §§ 65 and 71 of the old statute—and these sections became 253 and 288 in the '52 statute. The language which states that these sections were designed to eliminate the harshness of the old law which invalidated all claims if any one was invalid refers to the sections as originally enacted (about 1870). Prior to that time *any* overclaiming invalidated a patent; these sections merely eliminated that result *if* (1) the overclaiming was due to inadvertence or mistake and (2) a prompt disclaimer was filed.

whatever and it matters not one iota whether he seeks to do so by "giving" the invention away instead of by selling it—the result is the same, *i. e.*, if he does so more than one year before applying for his patent he loses any right he might otherwise have had to patent the invention.[1]

Furthermore, plaintiffs admit that the samples were given to Duke Power Company for the express purpose of getting them put on Duke's approved list so that Duke would purchase boxes of that type from B & C. Plaintiffs contend that there was no price quotation at that time and that therefore the boxes were not "on sale" within the meaning of § 102 (b). In support of that contention plaintiffs cite the case of Chicopee Mfg. Corp. v. Columbus Fiber Mills Co., 165 F.Supp. 307 (M.D.Ga.1958), as standing for the proposition that submission of samples constitutes placing on sale only if the samples are accompanied by a price quotation and only if submission of samples is the normal way of making sales in the business in question. This court does not understand that to be the law and a careful reading of *Chicopee* suggests that it does not support the proposition for which plaintiffs have cited it.

In *Chicopee* plaintiff's submission of samples of cloth to a designer in 1948 was held to constitute placing the cloth on sale[2], even though there was no actual offer to sell, since the plaintiff "would have sold it * * * if [the designer] had indicated a willingness to buy and he would, of course, have also sold yardage goods corresponding to the sample."[3] There is no indication whatever that a price quotation was submitted to the designer along with the 1948 sample.

This court finds that Duke Power's unrestricted possession of the Fisher meter box more than one year prior to the patent application constituted a public use within the meaning of 35 U.S.C. § 102(b). The court finds further that plaintiffs submitted the Fisher boxes to Duke for the purpose of having the boxes approved—a necessary prerequisite to Duke's purchasing the boxes—and that submission of samples for this purpose constituted placing the boxes "on sale" within the meaning of § 102(b). The court therefore Holds that the Fisher patent is invalid and defendant's motion for summary judgment is hereby granted. It is so ordered.

This 20 day of October, 1969.

/s/ NEWELL EDENFIELD

Newell Edenfield

United States District Judge

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

1. Egbert v. Lippman, 104 U.S. 333, 26 L.Ed. 755 (1881); FMC Corp. v. F. E. Myers & Bro. Co., 384 F.2d 4 (6th Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); Tool Research & Engineering Corp. v. Honcor Corp., 367 F.2d 449 (9th Cir. 1966), cert. denied, 387 U.S. 919, 87 S.Ct. 2032, 18 L.Ed.2d 972, reh. denied, 389 U.S. 893, 88 S.Ct. 17, 19 L.Ed.2d 203 (1967); Cloud v. Standard Packaging Corp., 376 F.2d 384 (7th Cir. 1967).

2. Chicopee Mfg. Corp. v. Columbus Fiber Mills Co., 165 F.Supp. 307, 323 (M.D. Ga.1958).

