**Gustav KRAUS, individually and doing business under the fictitious name and style of Condor Machine Works, Plaintiff,**

v.

**EMHART CORPORATION, a corporation, Standard-Knapp Division of Emhart Corporation, a corporation, et al., Defendants.**

No. 50288.

United States District Court, N. D. California.

Sept. 2, 1970.

John J. Whelan, San Francisco, Cal., for plaintiff.

Flehr, Hohback, Test, Albritton & Herbert, San Francisco, Cal. and McCormick, Paulding & Huber, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

Plaintiff holds a patent on a "case packing apparatus," United States Letters Patent No. 3,331,184.

That patent was issued on July 18, 1967, and describes a machine for automatically packing four six-packs (or alternatively three eight-packs) of cans or bottles into a cardboard case or tray.

Plaintiff is now charging defendants with patent infringement and violations of the antitrust laws.

The complaint on file herein sets forth four causes of action.

The first cause of action charges defendants with infringement of plaintiff's patent; defendants have answered by denying infringement and affirmatively alleging patent invalidity.

The second cause of action is set forth as an antitrust violation; defendants have answered by denying that any jurisdiction under the antitrust laws is conferred by the facts alleged in the second cause of action.

The third cause of action is also couched in terms of an antitrust violation and is based upon defendants alleged abuse of plaintiff's patent; defendants have answered by denying that any jurisdiction under the antitrust laws is conferred by the facts alleged in the third cause of action.

The fourth cause of action is a request for declaratory judgment of the same patent infringement alleged in the first cause of action. Plaintiff has informally withdrawn the fourth cause of action by his answer to defendants' interrogatory No. 55 which was answered on January 6, 1970 as follows:

"*Answer*. Plaintiff withdraws the Fourth Cause of Action since all issues raised by that cause of action and its denial by defendants are adequately covered by the First Cause of Action and the respective denial by the defendants." (See Appendix at page 8 attached to defendants' memorandum in support of the motion for summary judgment).

The action is now before the court on defendants' motion for summary judgment declaring the patent invalid and awarding defendants' costs and reasonable attorney fees.

In support of the motion for summary judgment defendants contend that plaintiff's patent, allegedly infringed by defendants, is invalid; that an invalid patent cannot be infringed; and that plaintiff's allegations of antitrust violations stem entirely from the allegations of patent infringement and, as such, are unsupportable if the patent is invalid.

Title 35 U.S.C. 102(b) provides, in part:

"§ *102 Conditions for patentability; novelty and loss of right to patent.*

A person shall be entitled to a patent unless—

\*    \*    \*    \*    \*    \*

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States \*    \*    \* "

The application for the patent in question was filed in the United States Patent Office on April 13, 1964. (See Exhibit 16 attached to defendants' memorandum in support of the motion for summary judgment).

Defendants allege, therefore, that any "public use" or placing "on sale" and operating of plaintiff's machine prior to April 13, 1963 renders plaintiff's patent completely invalid; i. e., April 13, 1963 is the "critical date."

Defendants charge that the patented machine was, in fact, on sale and operating as early as June 5, 1961.

In support of this charge defendants have submitted as Exhibit 13, a composite of a floor plan sketch and eight photographs of a case packing machine dated June 5, 1961 and labelled as belonging to plaintiff. Defendants allege that the ma-

chine depicted in Exhibit 13 is the same as the patented machine in question, the only difference being a widening of a shelf, known as a freeboard, on the patented machine. This shelf did not change the function of the machine and is not mentioned in the patent. (See Kraus deposition page 37 line 19 to page 38 line 7 and page 38 lines 8–9).

Defendants further allege that the machine shown in Exhibit 13 actually worked in 1961; this allegation is supported by the plaintiff's own deposition wherein he testified that the machine shown in Exhibit 13 did work as early as 1961. (See Kraus deposition page 25, page 26 line 21 to page 27 line 21).

Moreover, defendants assert that plaintiff offered the machine shown in Exhibit 13 for sale to the Falstaff Brewing Company in June, 1961; this allegation is supported by a letter dated June 16, 1961 from Kraus to Falstaff offering a case packer machine to Falstaff wherein plaintiff stated:

"Delivery is planned on a maximum ninety day basis. However, our present packer is now available for immediate installation in your San Jose plant on the terms above expressed." (See defendants' Exhibit 18 and Kraus deposition pages 42–44).

It is clear that the "present packer" referred to in that letter is the machine shown in Exhibit 13. In his deposition in answer to the question "By 'present packer,' do you mean this machine shown in the photographs of Ex. 13?" plaintiff responded "yes." (Kraus deposition page 44 lines 19–20).

Furthermore, defendants allege that plaintiff sold his machine in 1963, over one year prior to filing his patent application.

In support of this allegation defendants point out that in response to defendants' Interrogatory No. 45, relating to attempts by plaintiff to sell his case packing apparatus, plaintiff stated that in January, 1963, he attempted to sell the packer to Stroh Brewing Company of Detroit. (See Appendix page 2 attached to the defendants' memorandum in support of the motion for summary judgment).

The record establishes that plaintiff did, in fact, receive a purchase order from Stroh Brewing, dated March 8, 1963, together with a check for one-third payment dated March 6, 1963 (see Exhibits 31 and 32); that plaintiff deposited the check on March 11, 1963 (Exhibit 37(a) and (b)); that plaintiff installed the machine in Stroh's plant before the end of March, 1963 (Kraus deposition pages 88–89); that Stroh Brewing made the final payment by check dated April 1, 1963 (Exhibit 35); and that plaintiff deposited the check on April 16, 1963 (Exhibit 38(a) and (b)).

Plaintiff filed the patent application one year later on April 13, 1964.

Defendants allege that plaintiff's own testimony establishes that the machine shown on Exhibit 13 and offered to Falstaff in 1961 was the same machine actually sold to Stroh Brewing in 1963 and for which a patent application was filed in 1964.

In support of this allegation defendants point to the following excerpts from plaintiff's deposition:

"Q. Is the machine shown in these photographs on Exhibit 13 just a mock-up or did this machine actually work?

A. That is the machine that went to Stroh's, Detroit." (Kraus deposition page 26 lines 21–23).

"Q. So the machine that went to Stroh's is just like—

A. This one went to Stroh's and this one went to Carling's.

Q. So the machine that went to Stroh's is just like is shown in Exhibit 13?

A. Yes.

Q. No changes at all, then?

A. Not this freeboard change.

Q. Were there any changes?

A. The way this is here, it went to Stroh's." (Kraus deposition page 36 lines 6–13).

"Q. But the machine that you had in 1961 is the same machine that was eventually sold to Stroh's?

A. Yes." (Kraus deposition page 60 lines 7–9).

"Q. So it is a purchase order for the machine shown in Exhibit 13?

A. Say that again.

Q. It is a purchase order for the machine which is shown right here in Exhibit 13?

A. Yes . . ." (Kraus deposition page 84 lines 16–20 referring to the purchase order from Stroh's in 1963).

Defendants also allege that plaintiff's machine was not in the experimental stage in 1961 nor in 1963 and that it functioned perfectly.

These allegations also are supported by Kraus' deposition wherein he testified that the machine functioned perfectly in 1961 (deposition page 69, line 11–13) and that no further testing was done on the machine at Stroh Brewing following installation in 1963 (deposition page 97 line 11 to page 98 line 11).

In support of the contention that the antitrust charges in the second and third causes of action stem entirely from the charge of patent infringement defendants point to the following interrogatories and answers:

"Interrogatory 48. With respect to Paragraph VII of the second cause of action set forth in the Complaint identify and describe in detail the 'unlawful conduct of defendant.' Answer 48. Completing and using patent rights. The right of everyone to manufacture and to sell as long as he does not infringe."

"Interrogatory 50. With respect to Paragraph II of the third cause of action set forth in the Complaint, set forth in detail the manner in which defendants have abused the patent in suit. Answer 50. Infringed it."

In opposition to the motion for summary judgment plaintiff has filed two affidavits in which he alleges that the machine in question was not fully operative in 1961 and that it required further work which was not completed until February, 1963.[1]

After a review of the record in this action we are satisfied that the machine referred to in Exhibit 13 and offered to Falstaff in 1961 and the machine sold to Stroh Brewing in 1963 are the same as the machine for which plaintiff holds the patent in question.

Moreover, it is our opinion that the machine was "on sale" within the meaning of Section 102(b) more than one year prior to the filing of the patent application.

"'On sale' does not mean an actual accomplished sale but activity by the inventor or his company in attempting to sell the patented idea." Amphenol Corp. v. General Time Corp., 397 F.2d 431, 433 (7th Cir. 1968); Tucker Aluminum Products, Inc. v. Grossman, 312 F.2d 293, 295 (9th Cir. 1963).

In the instant case the record clearly establishes that defendant offered to sell his machine as early as 1961 and did, in fact, enter into a sale of the machine in 1963 over one year prior to the filing of the patent application.

Plaintiff has asserted that the 1961 machine was in an experimental stage in that automatic controls were required and that the 1961 machine used overhead guiderails which were later changed to compression belts.

It is our opinion that such changes were not of a significant nature and, therefore, had no effect on the basic invention for which a patent was sought.

This finding is supported by the fact that the automatic controls referred to were not included in the patent (see Kraus deposition page 61 line 24 to page

---

1. Plaintiff has not denied defendants' assertion that the antitrust charges are based entirely upon plaintiff's claims of patent infringement; therefore, we will assume that the antitrust claims are dependent upon the patent infringement claims and that they will stand or fall accordingly.

62 line 12), and by the fact that the overhead guiderails, which plaintiff contends were later chanted, were included in the patent application.

 The claims of the patent must measure the invention; here the additions referred to by plaintiff are mere refinements. The rule is that an invention is deemed functional for public use purposes when it can perform the general function for which it has been developed, even though the device might later be refined. Minnesota Mining & Mfg. Co. v. Kent Industries, Inc., 409 F. 2d 99, 101 (6th Cir. 1969); Atlas v. Eastern Airlines, Inc., 311 F.2d 156 (1st Cir. 1962).

Clearly, plaintiff's machine for which a patent was issued in 1967 is substantially similar to the machine sold to Stroh Brewing in 1963 and to the machine offered to Falstaff in 1961.

The purpose of Section 102(b) was to prevent the extension of the monopoly period permitted by patent laws by requiring an inventor to make timely application so that the patent period might commence to run without undue delay. Cataphote Corp. v. De Soto Chemical Coatings, Inc., 356 F.2d 24, 25 (9th Cir. 1966); Ushakoff v. United States, 327 F.2d 669, 672, 164 Ct.Cl. 455 (1964).

To uphold plaintiff's patent in the instant action would be to circumvent the express purpose of Section 102(b), this we cannot do.

It is well settled that summary judgment, holding a patent claim invalid, is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Proler Steel Corp. v. Luria Brothers & Co., 417 F.2d 272, 273 (9th Cir. 1969) and cases there cited.

In this action plaintiff's opposing affidavits fail to raise any question of *material* fact concerning the validity of his patent.

Therefore, we find that the patent in question, United States Letters Patent No. 3,331,184, is invalid and of no legal effect.

Because a claim of patent infringement requires a valid patent plaintiff's claim of patent infringement against defendants must now fall. Wham-O-Mfg. Co. v. Paradise Mfg. Co., 327 F.2d 748, 751 (9th Cir. 1964).

Assuming patent infringement can somehow constitute an antitrust violation plaintiff's claims of antitrust violations against defendants must also fall in that they stem from the claims of patent infringement.

Accordingly, it is the order of this court that defendants' motion for summary judgment declaring the patent in question invalid should be, and the same is, hereby granted.