MINNESOTA MINING AND MANUFAC-
TURING COMPANY, Plaintiff-
Appellant,

v.

KENT INDUSTRIES, INC., Sidney L.
Caplan, Delores M. Caplan, Anne
J. Moss, Defendants-Appellees.

No. 18447.

United States Court of Appeals
Sixth Circuit.

April 14, 1969.

Stanley G. DeLaHunt, St. Paul, Minn.,
for appellant, Harold J. Kinney, Walter
N. Kirn, Jr., Kinney, Alexander, Sell,
Steldt & DeLaHunt, St. Paul, Minn.,
Leslie W. Fleming, Butzel, Eaman,
Long, Gust & Kennedy, Detroit, Mich.,
on brief.

Bernard J. Cantor, Detroit, Mich.,
for appellees, Cullen, Sloman & Cantor,
Richard D. Grauer, Daniel G. Cullen,
Detroit, Mich., on brief.

Before O'SULLIVAN, CELEBREZZE
and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Plaintiff-appellant (hereinafter 3–M)
brought suit for injunctive relief and
damages against the defendants-appel-
lees in the District Court for infringe-
ment of its Thomson patent No. 2,610,-

910, relating to a neoprene-phenolic adhesive cement, that was issued on September 16, 1952. The defendants-appellees claimed the patent was invalid and raised several defenses, two of which were tried while the remaining issues were reserved pending the outcome of the present case. The District Court found one of the defenses that was tried dispositive of the case and held the Thomson patent, claims 1–10, invalid and unenforceable. This successful defense presents the only question which we need to decide, that is, whether the patented invention was in public use or on sale in this country more than one year prior to the date of the application for patent in the United States. 35 U.S.C. § 102(b).

■ The original patent application was filed on September 7, 1943. Therefore, the grace period under the above statute being one year before such application, the defendants-appellees had the burden of proving by clear and convincing evidence that the patented invention was in public use or on sale before September 7, 1942. FMC Corp. v. F. E. Myers & Bro. Co., 384 F.2d 4 (6th Cir. 1967), cert. denied, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968); Atlas v. Eastern Air Lines, Inc., 311 F.2d 156 (1st Cir. 1962), cert. denied, 373 U.S. 904, 83 S.Ct. 1290, 10 L.Ed.2d 199 (1963). "The purpose of the 1-year statutory bar is to prevent an inventor from obtaining profits on his invention for a number of years and then at a later date obtaining a patent." Ushakoff v. United States, 164 Ct.Cl. 455, 327 F.2d 669, 672 (1964). A noted exception to this statutory bar is where the prohibited activities are "substantially for purposes of experiment." Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 256, 8 S.Ct. 122, 31 L.Ed. 141 (1887). 3–M had the burden of proving that its activities prior to September 7, 1942, were solely part of an experimental program (FMC Corp. v. F. E. Myers & Bro. Co.,

384 F.2d at 10), since the defendants-appellees presented evidence of public use and on sale activities of the patented invention before that critical date.

■ It is settled law that a single public use (Consolidated Fruit-Jar Co. v. Wright, 94 U.S. 92, 24 L.Ed. 68 (1876)), or only a placing on sale (Smith & Griggs Mfg. Co. v. Sprague, 123 U.S. at 258, 88 S.Ct. 122), is sufficient to invalidate a patent under 35 U.S.C. § 102(b).

The experiments that led to the patented invention started in April 1942, when the advantages of a cold setting cement to be used to secure Trimite, a non-skid floor covering also produced by 3–M, became apparent. Tests were conducted in the 3–M laboratories until a satisfactory formulation was found. A sample of the selected formulation, ultimately to become the patented cement, was taken to the Navy Bureau of Ships on May 5, 1942. Procurement approval tests were conducted and the Bureau officially approved the cement on September 25, 1942, although the Navy's laboratory report recommended approval on August 6, 1942.

Similar promotional activities were being conducted with other governmental and industrial customers during the summer of 1942. Display panels, consisting of the cement and the non-skid floor covering, and cement samples were distributed to the 3–M salesmen for presentations and demonstrations to potential customers in the aircraft and shipbuilding industries.

The District Court * found that starting in May 1942, more than one year before the filing of the application, 3–M conducted a substantial sales program that included public displays and offers for sale of Trimite cloth in conjunction with the patented cement. The Court further found that 3–M failed to maintain its burden of proof that its commercial activities prior to the critical date of September 7, 1942, were experimental. In this regard, 3–M contended that the

---

* For a detailed presentation of the facts, see Minnesota Mining & Mfg. Co. v. Kent Industries, Inc., 274 F.Supp. 993 (E.D. Mich.1967).

patented cement could not be produced in large quantities since it would gel after a passage of time and that the necessary ingredient to prolong its shelf-life was not added until September 22, 1942, two weeks after the critical date. A second contention advanced was that the activities of its salesmen were for the purposes of field testing and evaluation. The District Court found neither of these contentions persuasive after a detailed examination of the evidence presented and it held that the experimentation on the patented cement had ended by May 5, 1942.

■ The District Judge further found that the invention was both in public use and on sale in this country prior to the one year grace period before application for the patent. Under the applicable statute, 35 U.S.C. § 102(b), a finding of either prohibitive activity would not only be fatal to 3–M's complaint, but also fatal to its remaining monopoly on the cement. We hold that the District Court's findings that the activities of 3–M, pertaining to the patented cement, prior to the one year critical date are not clearly erroneous and its findings are supported by substantial evidence in the record. Rule 52(a), Federal Rules of Civil Procedure.

The contentions of 3–M concerning its experimentation require comment. The claims of the patent include only three ingredients and no claim was made for the discovered ingredient Cumar that extended the shelf-life of the patented cement. 3–M states that experimentation continued with this latter aspect of the formulation up to September 22, 1942. It further contends that there were two formulations involved here, the original one before May 5, 1942, and the subsequently patented, modified formulation found after further experimentation during the summer of 1942 that produced added shelf-life to the cement. The District Court found that the Cumar ingredient was optional and not essential to the patented cement since the ingredient was not claimed in the patent,

and that therefore consideration of that point was irrelevant as to the public use or on sale questions.

■■ The claims of the patent and not the specifications measure the invention (Milcor Steel Co. v. George A. Fuller Co., 316 U.S. 143, 62 S.Ct. 969, 86 L.Ed. 1332 (1942); 35 U.S.C. § 112 (as amended 1965)), and here the Cumar ingredient, although beneficial, was not included in the patent claims. The further experiments after May 5, 1942, were necessary to attain the added shelf-life, but the tests were for a non-patented ingredient or feature and therefore it did not prevent the statute from operating to invalidate the patent. Accord, Robine v. Apco, Inc., 386 F.2d 267 (2d Cir. 1967); Midland Flour Milling Co. v. Bobbitt, 70 F.2d 416 (8th Cir. 1934). In Atlas v. Eastern Air Lines, Inc., 311 F.2d at 160, *supra,* the Court stated:

"[T]he rule is that an invention is deemed functional for public use purposes when it can perform the general function for which it has been developed, even though the device might later be refined. Hall v. MacNeale, 107 U.S. 90, 2 S.Ct. 73, 27 L.Ed. 367 (1882); National Biscuit Co. v. Crown Baking Co., 105 F.2d 422 (1st Cir. 1939); Monroe v. Bresee, 239 F. 727 (1917)."

■ The second contention of 3–M concerning the customers' field experimentation and evaluation of the cement, rather than sales efforts, is clearly unsupported by the evidence. The District Court found that no secrecy limitation was imposed on them, nor anything that suggested that the cement was still experimental. See, Egbert v. Lippmann, 104 U.S. 333, 336, 26 L.Ed. 755 (1881). There was also no convincing evidence to show that the results of the field tests were even reported back to 3–M and used in conjunction with its experiments.

The judgment of the District Court is affirmed.