**James J. DRAGANI, Plaintiff,**

v.

**EASTMAN KODAK COMPANY, Defendant.**

**No. C–2–81–1007.**

United States District Court, S.D. Ohio, E.D.

June 16, 1983.

Robert E. Stebens, Columbus, Ohio, for plaintiff.

John W. Zeiger, Columbus, Ohio, for defendant.

## MEMORANDUM AND ORDER

DUNCAN, District Judge.

This matter is before the Court on defendant's motion for summary judgment. The Court has reviewed the memoranda of the parties and the various documents and transcripts in the record. In addition, a hearing was held on this motion on April 1, 1983, and the Court has carefully considered the arguments of counsel in arriving at a decision on this matter. With an abundance of caution, the Court concludes that defendant's motion is well taken. The Court's findings and conclusions in this regard are set forth more fully below.

### I. *Statement of Facts*

### A. *Subject Matter Patented*

This case involves allegations of patent infringement insofar as plaintiff alleges that microfilming equipment manufactured and sold by defendant Kodak infringes on plaintiff's '560 patent. The '560 patent, which is the subject of this lawsuit, was applied for on June 6, 1977 and was issued on September 26, 1978, in the names of James Dragani ("Dragani") and David Wise ("Wise"). The patent at issue basically concerns a concept or method of microfilming and retrieving documents. Only certain aspects of the patent are at issue in this case. Therefore, while the patent discloses certain electrical circuitry for controlling the microfilming process, the technical aspects of the circuitry are not at issue, since the co-inventors of the matter patented readily admit that these items were not designed by them and concern matters of which they have no knowledge. (Wise deposition, Vol. I, pp. 21–22; Dragani deposition, pp. 15–22.) Rather, the basic claims at issue in this case are claims 26 and 27 which describe conceptually a method of microfilming and retrieving documents. This method has been called "selective blipping and numbering." (Dragani deposition, pp. 47, 66–68.)

A brief description and illustration of the concept of "selective blipping and numbering" as found in the '560 patent will be helpful to an understanding of the factual and legal issues in this case. The following diagram illustrates rather simplistically the concept of "selective blipping and numbering."

As is apparent, this method of microfilming documents for future retrieval works by selectively applying a blip beside certain documents and thereafter applying the same number as is found on the blipped document to each document which follows until the next document is blipped. As used in the insurance business for example, this method of "selective blipping and numbering" would work as follows. Insurance claims which are submitted on a claim form ("primary document") may be accompanied by supporting documents ("sub-documents"). When microfilming these documents for future retrieval, a blip would be applied to the primary document and thereafter the same number that was applied to the primary or "blipped" document would be applied to each of the supporting or sub-documents which are associated with the primary document. This method of selectively blipping and numbering microfilmed documents facilitates retrieval of those documents at a later time. Rather simply, the above explanation of "selective blipping and numbering" describes the concept found in claims 26 and 27 of plaintiff's patent.

### B. *Facts Surrounding Patent Application*

Based upon its review of the record in this case, the Court concludes that the following facts with respect to plaintiff's patent application are undisputed. Plaintiff Dragani was and is presently employed by Nationwide Insurance Company. Nationwide uses microfilming extensively in its operations in order to keep records of insurance claims for storage and retrieval. In 1973, while employed at Nationwide, plaintiff Dragani was assigned to investigate alternative and improved microfilming procedures. (Dragani deposition, 23–24 and defendant's Exhibit 92.) Dragani contacted a number of persons with expertise in microfilming during his investigation of alternative microfilming procedures, including Robert J. Varson, an employee of the United States Census Bureau. *Id.*

The undisputed facts are that in 1972 Varson had modified a Kodak Reliant 700 microfilming machine for the IRS, which modification resulted in the use of a selective blipping and numbering procedure of microfilming and retrieving documents.[1] In 1973, plaintiff Dragani had numerous conversations with Varson concerning this method of microfilming and also traveled to the IRS office in Covington, Kentucky, to observe Varson's equipment. (Varson affidavit ¶ 1–12; Dragani, p. 107–111; defendant's Exhibits 93–94.) Dragani also visited Varson at the Census Bureau where he further observed and discussed Varson's microfilming technique and equipment. (Dragani deposition, pp. 111–115.) The method of microfilming employed by Varson was one of "selective blipping and

---

**1.** The defendant does not raise the defense of prior art or obviousness in its motion for summary judgment, and the Court expresses no opinion concerning these matters. Moreover, while the defendant does contend that Varson, rather than plaintiff, is the inventor of the sub-ject matter sought to be patented, 35 U.S.C. § 102(f), the Court finds it unnecessary to address this alleged basis for summary judgment in light of its conclusions on the issues of prior use and/or sale.

numbering" as has previously been described. While plaintiff denies ever having specifically observed the same identifying number being applied to the primary and secondary documents, the evidence clearly establishes that this is precisely how the Varson method operated. (Dragani deposition, pp. 107–119; Varson affidavit ¶¶ 10–11, Exhibit B.)

Following the meetings and discussions with Varson, Dragani in a letter dated April 17, 1975, urged Nationwide to adopt a "selective blipping and numbering" method of microfilming. Nationwide thereafter solicited quotations from four potential suppliers, including David Wise Associates, on the basis of Dragani's descriptions. (Dragani deposition, pp. 26–30, defendant's Exhibit 99.)

On August 15, 1975, Nationwide issued a purchase order to David Wise Associates for making the necessary modifications to Nationwide's Kodak Reliant 700 equipment so as to implement the "selective blipping and numbering" concept. (Wise deposition Vol. I, pp. 70–72; defendant's Exhibits 6 and 7.) The terms of the purchase agreement between David Wise Associates and Nationwide are set out clearly in defendant's Exhibit 6 and 7. The contract between Wise and Nationwide indicates that the equipment was to be delivered, installed and tested in December 1975 and January 1976. A final test of the modified equipment would thereafter be conducted in February 1976 and if successful, payment would be made to Wise for the modifications. (See defendant's Exhibit 6 and 7.)

The evidence with respect to the sale of this modified system in fact discloses that the modified system was delivered to Nationwide in January 1976 (Wise deposition Vol. I, at 45–50). Throughout the months of January and February of 1976, the modified equipment was installed and tested. (Defendant's Exhibit 9.) On February 10, 1976, Nationwide commenced using the modified system (defendant's Exhibit 60).

The undisputed facts also disclose that on February 25, 1976, Nationwide conduct-

ed what the participants have referred to as a "final test" of the system. (Wise deposition Vol. I, pp. 75–77, Vol. II, pp. 43–52; defendant's Exhibits 25, 120.) On March 2, 1976, David Wise Associates invoiced Nationwide for the full contract price under the purchase order previously issued by Nationwide. (Defendant's Exhibit 12.) Thereafter on March 15, 1976, Nationwide paid David Wise Associates in full for the modified system installed. (Wise deposition Vol. I, pp. 75–77; defendant's Exhibits 11–13.) During the period of time following the "final test" until May 1976, Nationwide used the modified system purchased from David Wise Associates in its commercial operations to microfilm over 600,000 claim forms. (Baker affidavit ¶¶ 9–12.)

The modified equipment sold to Nationwide by David Wise undisputedly employed the concept of "selective blipping and numbering." (Dragani deposition pp. 27–28, 110–111.)

The correspondence and documentary evidence concerning the modified system following the final test leaves little doubt that the modified system embodying Dragani's concept was in commercial use at Nationwide during that time. For example, plaintiff Dragani wrote on February 11, 1976, that the equipment had "been delivered, installed, tested and [is] now in operation." (Defendant's Exhibit 120.) Subsequent correspondence from plaintiff Dragani indicated that he believed the system was not only "in use" but was "operating successfully." (See defendant's Exhibits 61, 62; Schaub deposition pp. 21–22, 28–29.)

Following the successful installation of the modified equipment, Dragani and Nationwide in April and May of 1976 began to allow persons from other companies to view the modified system, without imposing any secrecy or confidentiality restrictions on those viewing the modified equipment. (Dragani deposition pp. 46–54; defendant's Exhibits 63–65.) During the same period of time, plaintiff Dragani and his co-inventor, David Wise, made numerous public statements concerning the use

and success of the modified equipment which employed the concept of "selective blipping and numbering." (*See, e.g.,* defendant's Exhibits 41–52, 28.)

Thereafter, in June of 1977, plaintiff Dragani and David Wise applied for a patent. The information contained in Claims 1–25 of plaintiff's patent concern a microfilming system using circuitry which has never been built or used by Kodak in any of its equipment. (Wise deposition, Vol. I, pp. 31, 84–94; Astarita affidavit ¶ 12.) Moreover, claims 28–31 all concern a method or device for sensing the width of a document being microfilmed. It is undisputed that Kodak employs no such device or mechanism. (Astarita affidavit ¶ 11.)

Despite plaintiff's protestations to the contrary, this Court does not believe that any claims, other than claims 26 and 27, are at issue in this suit. *See Deepsouth Packing Co. v. Laitram Corp.,* 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972); *Cimiotti Unhairing Co. v. American Fur Refining Co.,* 198 U.S. 399, 410, 25 S.Ct. 697, 702, 49 L.Ed. 1100 (1905). (Patent infringement occurs only if every element of the claim is found in the accused device.) Claims 26 and 27, however, describe the "selective blipping and numbering" procedure used in microfilming and retrieving documents, which has already been described, and those claims are at issue in this suit.

## II. *Summary Judgment on Count I*

Defendant has moved this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Counts I through IV of plaintiff's complaint.

First, with respect to Count I of the plaintiff's complaint, the sole issue raised by that count is whether Kodak's use of the "selective blipping and numbering" method of microfilming, as described in claims 26 and 27 of plaintiff's patent constitutes an infringement of plaintiff's patent rights.

Defendant contends that based upon the undisputed facts, plaintiff's claims 26 and 27 are invalid and void and that defendant therefore is entitled to judgment as a matter of law. More specifically, defendant

claims that plaintiff's patent is invalid either because plaintiff himself did not invent the subject matter to be patented or in the alternative because the invention in question was in public use or on sale one year prior to the date of application for a patent.

Conversely, plaintiff contends that summary judgment is inappropriate because there are material issues of fact in dispute concerning whether plaintiff invented this concept or method of microfilming. Moreover, plaintiff contends that even assuming use and sale of the method described in claims 26 and 27 of his patent, summary judgment is inappropriate since there are material issues of fact concerning whether such use was experimental. The Court need not address defendant's first alleged basis for summary judgment, *i.e.,* that plaintiff's patent is invalid since he did not invent the microfilming method at issue, since the Court concludes that the undisputed facts establish that the invention in question was on sale and in use more than one year prior to the date of the patent application and that such use was not experimental.

### A. *Public Use or Sale*

Defendant contends that it is entitled to judgment as a matter of law because plaintiff's invention* was in use or on sale a year prior to his patent application. The Court begins its analysis by reference to the statutory provision at issue which provides in pertinent part that

A person shall be entitled to a patent unless ...

(b) the invention was ... in public use or on sale in this country more than one year prior to the date of the application for patent in the United States, ... 35 U.S.C. § 102(b) (1976).

The public use or on sale bar has been in patent law in some form or another since 1836. The last amendment to § 102(b) occurred in 1939 when Congress shortened the grace period from two years to one

year. *Act of Congress*, August 5, 1939, Ch. 450, § 1, 53 Stat. 1212.

The rationale for the one-year grace period found in § 102(b) is to provide inventors with an incentive to pursue diligently the patent process after their invention is ready for commercial application. Moreover, the grace period serves the dual purpose of limiting any monopoly of the inventor while encouraging an inventor to place his or her handiwork in the public domain as soon as possible so that all may benefit from it. *See Kock v. Quaker Oats Co.*, 681 F.2d 649 (9th Cir.1982), and cases cited therein.

 Given the purposes which underlie the public use and on sale bar, it is not surprising that those terms have been broadly defined by the courts.[2] Public use, generally, is defined as ordinary use of a machine or process in commercial production that is "any non-secret use of a completed operative invention in its natural and intended way." *Atlas Chemical Indust., Inc. v. Moraine Products*, 509 F.2d 1, 3 (6th Cir.1974); *F.M.C. Corp. v. F.E. Myers*, 384 F.2d 4, 9 (6th Cir.1967), *cert. denied*, 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Sale has also been defined broadly for purposes of § 102(b) of the patent laws, and includes not only an actual selling but also any offer for sale to a member of the public. *Smith & Griggs Mfg. Co. v. Sprague*, 123 U.S. 249, 8 S.Ct. 122, 31 L.Ed. 141 (1887).

 The undisputed facts of this case reveal that plaintiff Dragani and David Wise applied for their patent on June 6, 1977. Under 35 U.S.C. § 102(b), therefore, a valid patent could not issue if the invention was in public use or on sale more than one year prior to the date of the application, that is before June 6, 1976. The evidence discloses that David Wise Associates sold to Nationwide in early 1976 the very system that Dragani and Wise later sought to patent. In this regard, the Court has already noted that the modified system,

employing Dragani's concept of selective blipping and numbering was delivered, installed and tested in January and February 1976. A final test of that system was performed on February 15, 1976. In addition, Nationwide made final payment to David Wise for the system in March of 1976. (Wise deposition Vol. I, 75–79.)

In addition to this evidence establishing a sale more than a year prior to the patent application, there is further evidence establishing a public use of the invention sought to be patented more than a year prior to plaintiff's patent application. Initially, the Varson method of microfilming, which employed the concept of "selective blipping and numbering," was in use at the IRS as early as 1972–73. Even if this Court were to ignore the use of the Varson method, however, it is clear that Nationwide installed and used Dragani's method several months before June 6, 1976, *i.e.*, a year before Dragani's patent application. Indeed, from the "final test" date of February 15, 1976, until the month of May 1976, the Dragani method was used by Nationwide to process at least 600,000 Medicaid claims (Baker affidavit ¶¶ 10–12). Moreover, both co-inventors and plaintiff's attorney readily admitted throughout this period that the system was in public use as of February 1976 (*see* defendant's Exhibits 41–52, 28; *see* Stebens' letter dated September 29, 1976).

Despite this overwhelming evidence suggesting public use or sale more than one year prior to plaintiff's patent application, plaintiff maintains that defendant should not prevail on its motion because there is a factual dispute as to whether such public use or sale was for experimental purposes.

### B. *Experimental Use*

 At the outset, the Court notes that the concepts of public use and sale, as those concepts are defined in § 102(b) so as to result in patent invalidity, are inextrica-

---

**2.** While the concept of public use is different from that of sale of an invention, for our purpose, the distinction is unimportant. Both concepts are implicated by the facts of this case and therefore they will be discussed simultaneously.

bly bound to the exception of experimental use, as that exception has evolved in the case law. To establish a public use or sale under § 102(b), a defendant in an infringement suit bears the initial burden of showing such sale or use by clear and convincing evidence. Thereafter, once a *prima facie* case of public sale has been established, the burden shifts to the plaintiff who must then demonstrate by proof which is full, unequivocal and convincing, that the use or sale was experimental. *Elizabeth v. Pavement Co.*, 97 U.S. 126, 127, 24 L.Ed. 1000 (1877); *In re Theis*, 610 F.2d 786 (Cust. & Pat.App.1979); *Dunlop v. Kelsey-Hayes Co.*, 484 F.2d 407, 413-14 (6th Cir. 1973); *Atlas Chemical Indust., supra,* 509 F.2d at 4; *F.M.C. Corp., supra,* 384 F.2d at 9. In this circuit, at least, it is clear that the experimental use exception is to be guarded closely and the inventor has the burden of proving that any use "was not of a functionally operative device, or was substantially used for experimental or testing purposes." *Dunlop, supra,* 484 F.2d at 414.

■ By the same token, the Court is mindful that this matter is before it on defendant's motion for summary judgment. On a motion for summary judgment, if the patent holder raises the "experimental use" defense, the Court is obliged to view the evidence in a light most favorable to the party opposing the motion to insure that there is no genuine issue of material fact with respect to the experimental use defense. *See Stearns v. Beckman Instr. Inc.*, 505 F.Supp. 1035, 1038 (S.D.Tex.1981); *DeLong Corp. v. Raymond Int'l. Inc.*, 622 F.2d 1135, 1144 (3d Cir.1980).

In determining whether the transfer of the Dragani invention to Nationwide fell within the experimental use exception, and in determining the closely related question of whether the pleadings present a triable issue of fact on this point, the Court must carefully examine the legal principles which have evolved with respect to the experimental use exception to the public use and on sale bar found in 35 U.S.C. § 102(b).

■ While the purpose of a sale is generally a matter resolved by reference to the inventor's intent, it is clear that such intent may be ascertained from objective circumstances or objective evidence and summary judgment may therefore be appropriate. *Kock v. Quaker Oats Co.*, 681 F.2d 649 (9th Cir.1982); *Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426 (9th Cir.1973). *But see Del Mar Engineering Labs v. Physio-Tronics*, 642 F.2d 1167 (9th Cir.1981); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65 (2d Cir.1971).

In this regard some cases speak of the inquiry into experimental purpose as investigating the inventor's intent while others speak of the question of whether from the surrounding circumstances it is clear that the invention was being used commercially as opposed to experimentally. *Compare Cataphote Corp. v. DeSoto Chemical Coatings, Inc.*, 356 F.2d 24 (9th Cir.1966) *with Robbins Co. v. Lawrence Mfg. Co.*, 482 F.2d 426 (9th Cir.1973).

This Court concludes that any perceived conflict in these decisions with respect to the appropriate inquiry when the experimental use defense is invoked is more apparent than real. While it is true, therefore, that the motivating force for experiments will normally come from the inventor, it is also true that if the buyer or user of the invention does not know or have reason to know of the inventor's experimental purpose, it is unlikely that the Court will either. Therefore, most courts acknowledge that an inventor's alleged experimental goals or intentions have no force against clear and overwhelming evidence to the contrary. *Campbell v. Spectrum Automation Co.*, 601 F.2d 246, 253 (6th Cir.1979); *Atlas Chemical Indust., supra,* 509 F.2d at 4; *Robbins, supra,* 482 F.2d at 430.

The Court does not believe, therefore, that plaintiff's merely conclusory description of this sale and use as "experimental" is sufficient to raise a genuine issue of material fact so as to preclude the granting of summary judgment. *See also, Atlas v. Eastern Air Lines*, 311 F.2d 156, 162 (1st

Cir.1962). Rather, the Court believes that a detailed analysis of the law with respect to the experimental use exception leaves little doubt that on the facts of this case the experimental use exception is inapplicable.

■ For the experimental use exception to apply, the party invoking the exception must prove that the seller intended the product to be used *primarily* for experimentation rather than for commercial exploitation. *Elizabeth v. Pavement Co.*, 97 U.S. 126, 24 L.Ed. 1000 (1878); *Smith & Griggs Mfg., supra,* 123 U.S. at 257, 8 S.Ct. at 126; *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.,* 569 F.2d 286, 290–91 (5th Cir.1978); *In re Yarn Processing Patent Validity Litigation,* 498 F.2d 271, 286 (5th Cir.), *cert. denied,* 419 U.S. 1057, 95 S.Ct. 640, 42 L.Ed.2d 654 (1974); *F.M.C. Corp. v. F.E. Myers & Bros.,* 384 F.2d 4, 10 (6th Cir.1967), *cert. denied,* 390 U.S. 988, 88 S.Ct. 1183, 19 L.Ed.2d 1291 (1968). Therefore, a sale or use of an invention primarily for or for the dominant purpose of experimentation will not bar patentability. *See also Amerio Plate Freezers, Inc. v. Belt-Ice Corp.,* 316 F.2d 459, 465 (9th Cir.1963); *Watson v. Allen,* 254 F.2d 342 (D.C.Cir. 1958); *Taussig v. Jack & Jill One Hour Cleaners,* 462 F.Supp. 1026, 1038 (N.D. Ohio 1978), *aff'd.,* 633 F.2d 215 (6th Cir. 1980).

■ In determining whether the sale or use of an invention was primarily for experimentation, a court may look at objective evidence of experimental purpose which may be ascertained by reference to a number of specific factors. First, a court may look to the terms of any sales contract in order to determine whether any restrictions or conditions concerning experimentation or secrecy were imposed on the buyer by the terms of such contract or sale. *See, Mfg. Research Corp. v. Graybar Elec. Co.,* 679 F.2d 1355 (11th Cir.1982); *Cataphote Corp., supra,* 356 F.2d at 939–40; *Robbins Co., supra,* 482 F.2d at 432; *A Jem Laboratories v. C.M. Ladd Co.,* 424 F.2d 1124, 1125–28 (6th Cir.1970), *cert. denied,* 400 U.S. 830, 91 S.Ct. 59, 27 L.Ed.2d 60. The court may also look to all the facts and circumstances surrounding any sale or use to determine whether the inventor maintained any control over such use following a sale, as for example where the buyer makes reports to the inventor concerning the invention. *Robbins Co., supra,* 482 F.2d at 432; *A Jem Laboratories, supra,* 424 F.2d at 1126–28; *Kock v. Quaker Oats, supra,* 681 F.2d at 652. Moreover, the court may look to any confidentiality or secrecy requirements imposed on the buyer-user, as well as whether such requirements could be or were enforced. Finally, the court may look to the stage of completion of the invention sold, that is whether the invention in question was "reduced to practice" or "fully operative." *In re Yarn Processing Litigation, supra,* 498 F.2d at 274; *Dart Industries v. E.I. duPont,* 489 F.2d 1359 (7th Cir.1973); *A Jem Laboratories v. C.M. Ladd Co., supra,* 424 F.2d at 1125–1128; *Amerio Contact Plate Freezers, Inc., supra,* 316 F.2d at 461; *Minn. Mining Co. v. Kent Industries,* 409 F.2d 99, 101 (6th Cir.1969); *Stearns v. Beckman, supra,* 505 F.Supp. at 1037.

Having stated the applicable legal principles, the Court will now analyze the facts in the record of this case with a view towards determining whether there is any support for plaintiff's invocation of the experimental purpose exception.

At the outset the Court notes that the sale of the modified system which embodied plaintiff's concept, as evidenced by the documents concerning that sale, does not contain any reservations or conditions concerning experimentation. (*See* defendant's Exhibits 6 and 7.) While those documents do indicate that phases or periods of testing would occur following the initial installation, there is nothing to indicate that this initial testing was *primarily* for experimentation as opposed to ordinary tests, pursuant to a plan to commercially exploit and promote the plaintiff's invention by a pilot commercial sale as would demonstrate the usefulness and advantages of plaintiff's method.

Moreover, even assuming some initial experimentation was contemplated in this case, the documentary evidence concerning the sale indicates that such testing and experimentation was to be completed in February of 1976. In fact, a "final test" of the modified equipment pursuant to the terms of the sales contract was held on February 15, 1976, and final payment for the equipment, which was to be made upon completion of such tests, was actually made in March of 1976. Therefore, even if this Court were to assume that objective evidence concerning the sale indicates some experimental purpose, the facts reveal that any reservation of a right of experimentation expired in February or March of 1976, which was more than a year preceding plaintiff's patent application. *See, e.g., Kock v. Quaker Oats, supra,* 681 F.2d at 650; *Cataphote Corp., supra,* 235 F.Supp. at 938. At the very least, therefore, at the expiration of the predetermined period for testing, following payment by the buyer for the equipment, the buyer owned the equipment in question and had the right to commercially use and exploit the invention without any attendant obligation to experiment.

This Court's conclusion that the experimental use exception is inapplicable, is further buttressed by the fact that the system sold in this case was "reduced to practice" and "fully operational" at least at the point in time following the "final test," if not sooner. *See Stearns v. Beckman, supra,* 505 F.Supp. at 1037–1040; *Cataphote Corp., supra,* 235 F.Supp. at 940. The fact that this device was complete and capable of performing the "general function for which it [had] been developed" is clearly evidenced by the fact that from the final test in February 1976 until May 1976, the purchaser not only knew how the invention would operate but also used the invention commercially to process over 600,000 Medicaid claim forms. *See Minn. Mining Co., supra,* 409 F.2d at 101; *Mfg. Research Corp. v. Graybar Electric Co.,* 679 F.2d 1355 (11th Cir.1982). It is clear, from this undisputed evidence that following the final test, the Dragani method was reduced

to practice such that its practical utility in its intended field of use was fully demonstrated. *A Jem Laboratories, supra,* 424 F.2d at 1127; *Dart Industries, supra,* 489 F.2d at 1360.

Moreover, the Court is quick to point out that plaintiff Dragani and his co-inventor, David Wise, by their own admissions, acknowledge to some extent that their invention was beyond the experimental stage and was fully and successfully operating. (*See* Wise deposition Vol. I, p. 135–36; Dragani deposition p. 125; Exhibits 60, 61, 62, 120.)

The evidence is undisputed that following the final test in February, plaintiff Dragani and co-inventor Wise, in correspondence and printed articles, not only make no suggestion of experimentation, but rather tout the successful operation of their invention. (See Baker affidavit ¶¶ 9, 12; Schaub deposition pp. 21–22, 28–29; defendant's Exhibits 41–52, 28, 61–65.) The statements of the plaintiff and his co-inventor at this time informing the general public as well as members of the trade of the success of his invention not only militates against finding that plaintiff was primarily motivated by experimental purposes, but also belies any allegation that the sale or use of plaintiff's invention was somehow confidential or protected by a shroud of secrecy.

Despite these clear, overwhelming and objective facts suggesting that the use and sale of plaintiff's invention was not experimental, plaintiff contends that there is factual support for the proposition that the period of experimentation did not conclude with the final test and that additional tests were conducted thereafter in an attempt to bring the system to perfection, and which tests resulted in further modifications to the systems. *See Elizabeth v. Pavement Co., supra,* 97 U.S. at 127–131, 24 L.Ed. 1000; *Atlas v. Eastern Air Lines,* 311 F.2d 156, 162 (1st Cir.1962).

This Court fully realizes that unique circumstances may arise where experimentation continues beyond a point where an invention has been reduced to

practice; however, such is not the case here. A device or invention which is reduced to practice and performs the general function for which it was developed is in public use, and minor refinements in such a device will not be sufficient to support a finding of experimental use. *Hall v. MacNeale,* 107 U.S. 90, 2 S.Ct. 73, 27 L.Ed. 367 (1882); *Mfg. Research Corp., supra,* 679 F.2d at 1358; *Kraus v. Emhart Corp.,* 320 F.Supp. 60 (N.D.Cal.1970). Since it is beyond dispute that minor adjustments, modifications, improvements or variations in an invention will not compromise experimental use so as· to avoid the invalidation effect of a prior public use or sale, *see, e.g., Cataphote Corp., supra,* 235 F.Supp. ·at 940; *Hobbs v. U.S. Atomic Energy Comm'n.,* 451 F.2d 849, 859 (5th Cir.1971); *Minn. Mining Co., supra,* 409 F.2d at 101, it is of no moment that Dragani or Wise made modifications or adjustments to their invention to facilitate or enhance its productivity. The Court further notes that there is no dispute concerning the nature of the modifications made after the final test. The plaintiff and his co-inventor admit that their invention was fully operational after the final test and that adjustments and modifications made after that point could be characterized as "fine tuning" or refinements in the invention. (*See* Dragani deposition pp. 121–127; Wise deposition Vol. I, pp. 134–136; Baker affidavit ¶¶ 9–12; defendant's Exhibits 60–63, 120.)

▮▮▮ Finally, with respect to these alleged modifications, the Court notes that many of these modifications did not even pertain to the aspects of plaintiff's patented invention which are pertinent to this suit. *Id.* Since the experimental use exception is inapplicable with respect to modifications performed on nonclaimed features of an invention, *Minn. Mining Co., supra,* 409 F.2d at 101; *In re Theis, supra,* 610 F.2d at 793; *Ex-Cell-O Corp. v. Litton Indust. Products, Inc.,* 479 F.Supp. 671 (E.D.Mich.1979), and since it appears unequivocally that many of the modifications allegedly made to plaintiff's invention were solely for the purposes of correcting problems unrelated to claims 26 and 27, plain-

tiff cannot invoke the experimental use exception based on the minor modifications to the microfilm system installed at Nationwide.

In summary, this Court concludes that plaintiff's invention was in public use or on sale one year prior to plaintiff's patent application and that such use was not experimental. Therefore, claims 26 and 27 of plaintiff's patent are invalid and defendant's motion for summary judgment on Count I alleging patent infringement is well taken and accordingly is GRANTED.

### III. *Summary Judgment on Counts II, III, IV*

Having concluded that the defendant is entitled to judgment as a matter of law on Count I of plaintiff's complaint, the Court must next consider defendant's motion for summary judgment with respect to the remaining counts of plaintiff's complaint. Count II of plaintiff's complaint alleges that Dragani "advanced certain confidential information to defendant and that Kodak utilized" that information and was consequently "unjustly enriched." Count III charges defendant with use of trade secrets of Dragani. Finally, Count IV alleges that Kodak violated R.C. 4165.02 by engaging in deceptive trade practices.

▮▮▮ In order to establish a claim for misappropriation or unjust enrichment by use of confidential information or trade secrets, as set forth in Counts II and III of plaintiff's complaint, plaintiff must show that the information alleged to have been misappropriated was a trade secret; was acquired in confidence; and was used without authorization of the owner of the secret. *Kewanee Oil Co. v. Bicron Corp.,* 416 U.S. 470, 475–76, 94 S.Ct. 1879, 1883, 40 L.Ed.2d 315 (1974); *GTI Corp. v. Calhoon,* 309 F.Supp. 762, 767 (S.D.Ohio 1969).

▮▮▮ The undisputed facts in this case make clear that there is no support for plaintiff's allegations of misappropriation as set forth in Counts II and III of plaintiff's complaint. The concept of "selective blipping and numbering" can hardly be

deemed secret. The evidence discloses that as early as 1972–73, Robert Varson made freely available all his developments and work with respect to the "selective blipping and numbering" method of microfilming. (Dragani deposition pp. 106–107; Astarita affidavit ¶¶ 3–9.) Moreover, the plaintiff readily and freely admitted that he himself freely disclosed his concept to anyone who was interested and made no attempt, and took no steps, to secret his invention. (Dragani deposition pp. 46–54, 106; defendant's Exhibit 28.) Finally, as has already been noted, plaintiff Dragani and the buyer of plaintiff's invention, Nationwide, invited a number of companies, including defendant, to observe plaintiff's invention in operation. (Dragani deposition pp. 26–34, 37–41, 46–54, 88–89; defendant's Exhibit 99.)

It is clear, therefore, based upon this undisputed evidence, that plaintiff's concept was freely disseminated and that no claim for misappropriation or unjust enrichment by use of trade secrets is cognizable. Accordingly, the Court concludes that defendant's motion for summary judgment with respect to Counts II and III of plaintiff's complaint is well taken and is therefore GRANTED.

Finally, Count IV of plaintiff's complaint alleges that defendant committed deceptive trade practices in violation of R.C. 4165.02, 4165.03. More specifically, Dragani alleges that defendant Kodak has violated these statutory sections in the following ways:

> (A) Pass[ing] off goods or services as those of another;

> (B) Caus[ing] likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

> . . . . .

> (H) Disparag[ing] the goods, services, or business of another by false representations of fact;

> . . . . .

R.C. 4165.02, 4165.03.

In this regard, Dragani alleges that Kodak represented that Dragani's microfilming system is available from Kodak and that Kodak may refuse maintenance on Kodak microfilming equipment using Dragani's system; plaintiff further alleges that Kodak is causing a likelihood of confusion as to source of and disparaging the goods and business of Dragani. (Complaint ¶¶ 17 and 20.)

With respect to the allegations found in Count IV of plaintiff's complaint, the Court notes that plaintiff Dragani readily admits that he has no business or prospective customers necessary to support the allegations in Count IV. (Dragani deposition pp. 95–96, 99.) Additionally, with respect to Dragani's allegation that Kodak is passing off goods or services as those of another, Dragani admitted that he had no knowledge of whether Kodak passed off its equipment as Dragani's, and that he had no knowledge that Kodak disparaged his goods. (Dragani deposition pp. 98–99; 99–103.)

Finally, it is undisputed, as evidenced by plaintiff's own admissions, that there is no factual basis for any of the allegations in Count IV. (See Dragani deposition pp. 95–103.) Absent some factual basis for the allegations set forth in Count IV, this Court simply concludes that no rational reason exists for continuing to entertain those allegations. Accordingly, defendant's motion for summary judgment as to Count IV is GRANTED.

### Conclusion

Having carefully considered the matters before it, the Court concludes that defendant's motion for summary judgment is well taken. Accordingly, for the reasons set forth more fully above, defendant's motion is GRANTED.

SO ORDERED.